IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TAMARA L.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 6:20-cv-01601-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    Plaintiff Tamara L. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Plaintiff argues the ALJ erred by (1) improperly construing her residual functional capacity ("RFC") and (2) failing to address new evidence of conflicting job numbers. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

    A reviewing court will affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v.*

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

1 – OPINION AND ORDER

*Saul*, 988 F.3d 1111, 1114–15 (9th Cir. 2021). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the Court reviews the entire administrative record, weighing both the evidence that supports and detracts from the ALJ's decision. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## **DISCUSSION**

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2021). The initial burden of proof rests on the claimant to meet the first four steps. If the claimant satisfies her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant can adjust to other work after considering the claimant's RFC, age, education, and work experience. *Id.*; *Tackett v. Apfel*, 180 F.3d 1094, 1100–01 (9th Cir. 1999). If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner finds that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

At step two the ALJ found that Plaintiff had the following severe impairments: bilateral hip bursitis; obesity; anemia; asthma; lumbar degenerative disc disease; sciatica; anxiety; depression; fibromyalgia; and borderline intellectual functioning. Tr. 15. The ALJ assigned Plaintiff the following RFC:

> [T]he claimant . . . [can] perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations. The claimant can lift/carry 10 pounds occasionally and less than 10 pounds frequently. She can stand/walk about two hours and sit about six hours during an eight-hour workday. The claimant must have the option to change between sitting and standing every 30 minutes for up to 5 minutes while remaining at the workstation. She can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps/stairs, balance and stoop. She can rarely crouch (no more than 15% of the day). The claimant cannot kneel or crawl. She can occasionally reach overhead. The claimant can frequently handle/finger bilaterally. She must avoid all use of moving machinery and exposure to unprotected heights. The claimant can perform simple, routine, repetitive tasks requiring minimal reading and writing skills. She can work at a low stress job that does not require her to cope with work-related circumstances that can be dangerous and without security work, production paces, or sales quotas. The claimant can tolerate occasional changes to the workplace. The claimant can perform tasks in which concentration is not critical, defined as careful and exact evaluation and judgment.

Tr. 19. Based on the vocational expert's ("VE") testimony, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy. Tr. 25–26. Accordingly, the ALJ determined that Plaintiff was not disabled. Tr. 26.

**I. RFC**

Plaintiff argues the ALJ erred by failing to include in her RFC the state agency psychological consultants' opinion that Plaintiff is limited to jobs with no reading or writing. Pl.'s Br. 5–6, ECF No. 8. A claimant's RFC is the most the claimant can do in a work setting on a "regular and continuing basis" despite her limitations. 20 C.F.R. § 404.1545 (2021). In formulating an RFC, the ALJ must consider all medically determinable impairments, both severe and non-severe, and evaluate "all of the relevant medical and other evidence." *Id.* § 404.1545(a)(2)–(3). The ALJ is tasked with resolving conflicts in the medical testimony and interpreting the evidence to form concrete functional limitations. *See* SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). "[A]n RFC that fails to take into account

a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

Here, state agency psychological consultant Dr. Ju assessed Plaintiff's ability to perform sustained work activities, opining that Plaintiff "is capable of understanding and remembering short, simple 2-3 step instructions but not complex, detailed instructions. She is precluded from tasks requiring reading, writing, and money exchange. She is best at hands-on learning (e.g. modeling, demonstration)." Tr. 86. Dr. Friedburg, another state agency psychological consultant, concurred with Dr. Ju's overall assessment. Tr. 23, 129–30. In his decision regarding Plaintiff's mental functioning, the ALJ noted that Plaintiff reports being illiterate, and that Vocational Rehabilitation testing revealed Plaintiff has second-grade reading and writing skills. Tr. 22. At the administrative hearing, Plaintiff stated she can only read and write four letters long. Tr. 37. She forgets how to spell words if she goes longer than a month without writing them. *Id.*

The ALJ ultimately gave Dr. Ju and Dr. Friedburg's opinions great weight and limited Plaintiff to jobs with "simple, routine, repetitive tasks requiring minimal reading and writing skills." Tr. 19, 23. After the ALJ posed a hypothetical individual of Plaintiff's age, education, work experience, and RFC, the VE provided three jobs that such an individual could perform: Marker (DOT 209.587-034), Small Products Assembler II (DOT 739.687-030), and Electronics Worker (DOT 726.687-010). Tr. 42–44. The ALJ noted that all three jobs "taught through short demonstration or verbal instructions with minimal written material." Tr. 26.

Plaintiff argues the ALJ's RFC limitation of "minimal reading and writing skills" is inconsistent with Dr. Ju and Dr. Friedburg's limitation of tasks with no reading or writing. Pl.'s Br. 5. Even assuming Plaintiff is correct, the error is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n ALJ's error is harmless where it is inconsequential to the ultimate

4 – OPINION AND ORDER

nondisability determination."). While Plaintiff points out that the Marker job may require some skills related to reading or writing, Plaintiff concedes that she could perform the Small Products Assembler II and Electronics Worker jobs because neither occupation requires the ability to read or write. Pl.'s Br. 6. The VE testified that about 90,000 Small Products Assembler II jobs and 199,185 Electronics Worker jobs exist nationally. Tr. 43–44. Both jobs alone contain significant numbers in the national economy, satisfying the Commissioner's burden at step five. *See Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519, 528–29 (9th Cir. 2014) (finding that 25,000 jobs constitutes a significant number of jobs in the national economy). The ALJ's perceived error in construing Plaintiff's RFC, which would eliminate the Marker job, is therefore inconsequential to the non-disability determination.

**II. Job Numbers**

Plaintiff argues that new evidence shows the VE's job numbers are severely inflated, rendering the VE's testimony unreliable. Pl.'s Br. 9. After providing three occupations that an individual with Plaintiff's age, education, work experience, and RFC could perform, the ALJ posed a second hypothetical to the VE which included sedentary rather than light work. Tr. 44. The VE testified that, based on his experience, the Marker and Small Products Assembler II jobs would experience a 50% reduction in job numbers because of the lifting limitations involved with sedentary work. *Id.* After reduction, the VE stated there are 50,000 Marker jobs, 90,000 Small Products Assembler II jobs, and 199,185 Electronics Worker jobs nationally. *Id.*

"A VE's recognized expertise provides the necessary foundation for his or her testimony." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "[I]n the absence of any contrary evidence, a VE's testimony is one type of job information that is regarded as inherently reliable; thus, there is no need for an ALJ to assess its reliability." *Buck v. Berryhill*, 869 F.3d

1040, 1051 (9th Cir. 2017). Where a plaintiff submits evidence of job numbers that differ significantly from those the VE proffered, the Ninth Circuit has recognized a narrow exception to the general rule that VE testimony is inherently reliable. In *Buck*, the plaintiff submitted post-hearing evidence of job numbers to the ALJ—allegedly using the same software program as the VE—which showed significantly less jobs than the VE's numbers. *Id.* at 1047. In light of the direct conflict in the evidence, the Ninth Circuit reversed and remanded for further proceedings, opining that "the vast discrepancy between the VE's job numbers and those tendered by [plaintiff], presumably from the same source, is simply too striking to be ignored." *Id.* at 1052.

That said, courts have consistently held that a VE's testimony is not undermined where the plaintiff challenges the VE's job numbers with data from a *different source* than what the VE relied on. *See, e.g.*, *Kremlingson v. Saul*, 800 F. App'x 531, 532–33 (9th Cir. 2020) (concluding that the plaintiff's "lay interpretation" of job numbers she found online and of the VE's data was insufficient to preclude the ALJ from relying on the VE's testimony); *Tracey Anne P. v. Kijakazi*, No. 20cv1163, 2021 WL 4993021, at *11 (S.D. Cal. Oct. 27, 2021) (concluding that the plaintiff's "lay assessment" of Job Browser Pro data did not undermine the reliability of the VE's assessment of U.S. Department of Labor and Job Browser Pro data); *Dickerson v. Saul*, No. 20-cv-01585, 2021 WL 3832223, at *6 (D. Nev. Aug. 27, 2021) ("Plaintiff's assessment of the raw vocational data derived from Job Browser Pro and Occu-Collect does not undermine the reliability of the vocational expert's opinion."); *Solano v. Colvin*, No. SA CV 12-01047, 2013 WL 3776333, at *1 (C.D. Cal. July 16, 2013) (concluding that the plaintiff's data from a source not relied on by the VE did not undermine the reliability of the VE's testimony).

After the hearing but before the ALJ issued his decision, Plaintiff submitted evidence of conflicting job numbers. Pl.'s Br. 9. Plaintiff contends the VE's drastically larger job numbers

come from broader OES groups rather than specific DOT occupations. Pl.'s Br. 9; Ex. 1, at 2–3. Plaintiff submitted reports from the Job Browser Pro program and relied on information from O*Net Online and the Bureau of Labor Statistics to show only 1,209 Small Products Assembler II jobs and 274 Electronics Worker jobs. Pl.'s Br. 9; Ex. 1. The VE, however, obtained his job numbers from the United Staff Publishing program. Tr. 46. The VE further relied on his experience as a vocational counselor, and testified that his answers were consistent with the DOT. Tr. 45–46.

Plaintiff's argument concerning OES groups relies on her own lay interpretation of jobs data pulled from various sources, none of which the VE here relied on. Plaintiff's Job Browser Pro reports, though they reflect much lower job numbers than the VE's numbers, do not refute the VE's job numbers obtained from a different program. Because there is no direct conflict between Plaintiff's job numbers and the VE's job numbers from the same source, this case does not fall into the narrow exception recognized in *Buck*. Plaintiff merely presents a competing interpretation of the evidence, which is insufficient to undermine the reliability of the VE's testimony. *See also Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (explaining that where the evidence is susceptible to more than one rational interpretation, the Court must defer to the ALJ's conclusion). Accordingly, even accounting for the ALJ's perceived harmless error regarding the Marker job, the ALJ's step five findings are supported by substantial evidence in the record.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 28th day of March, 2022.

                                                  s/Michael J. McShane
                                                  Michael J. McShane
                                                  United States District Judge